IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JENELLE McCRAY-KELLER,

      Plaintiff,    No. 2:12-cv-674-EFB

    vs.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.    ORDER
_____/

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability and Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties' cross-motions for summary judgment are pending. For the reasons discussed below, the court denies plaintiff's motion and grants the Commissioner's motion.

I.    BACKGROUND

Plaintiff filed applications for a period of disability, DIB, and SSI benefits on May 19, 2008, alleging that he had been disabled since December 15, 2007. Administrative Record ("AR") 102-109. Plaintiff's applications were initially denied on July 15, 2008, and upon reconsideration on October 24, 2008. *Id*. at 55-59. On February 5, 2010, a hearing was held

1

before administrative law judge ("ALJ") Mark C. Ramsey. *Id.* at 25-50. Plaintiff was represented by counsel at the hearing, at which he testified. *Id.*

On June 22, 2010, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(I), 223(d), and 1614(a)(3)(A) of the act.[1] *Id.* at 12-19. The ALJ made the following specific findings:

> 1. The claimant meets the insured status requirement of the Social Security Act through December 31, 2009.
>
> 2. The claimant has not engaged in substantial gainful activity since December 15, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert,* 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

2

> 3. The claimant has the following severe impairments: bipolar disorder and borderline personality disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> * * *
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> * * *
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the fully range of work at all exertional levels, including simple and complex work, but is restricted from public work or work in unison with fellow employees.
>
> * * *
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> * * *
>
> 7. The claimant was born on February 22, 1985 and was 22 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416963).
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocation Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (see SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
> * * *
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from December 15, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

*Id.* at 12-16.

Plaintiff requested that the Appeals Council review the ALJ's decision, *id.* at 87, and on February 21, 2012, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner. *Id*. at 1-4.

## II. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## III. ANALYSIS

Plaintiff argues that the ALJ erred in (1) rejecting the opinion of plaintiff's treating physician in favor of the opinions from examining and non-examining sources; (2) finding that plaintiff did not satisfy the paragraph B criteria for listings 12.02, 12.04, and 12.08; (3) and finding that plaintiff did not satisfy the paragraph C criteria for listings 12.02, 12.04, and 12.08. Pl.'s Mem. P & A ISO Mot. for Summ. J., ECF No. 15-1 at 9-18. Plaintiff further argues that the

4

Appeals Council erred by failing to remand the matter to the ALJ in light of additional evidence submitted after the ALJ's decision. *Id*. at 33.[2]

> A.   The ALJ Provided Legally Sufficient Reasons for Rejecting the Opinion of Plaintiff's Treating Physician and the Appeals Council Did Not Err by Failing to Remand in Light of Additional Evidence

Plaintiff first argues that the ALJ rejected the opinion of Dr. Lim, plaintiff's treating physician, without providing legally sufficient reasons. ECF No. 15-1 at 17-20. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. *Id.* at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

---

[2] The page numbers cited herein refer to those assigned by the court's electronic filing system and not those assigned by the parties.

5

Plaintiff was treated by Dr. Russell Lim from October 14, 2008 through December 7, 2009. AR 395-419. On February 24, 2009, Dr. Lim examined plaintiff and completed a Medical Source Statement–Mental. *Id*. at 247-248, 406. Plaintiff reported that she continues to experience a depressed mood, irritability, and difficulty sleeping. *Id*. at 406. As for objective findings, Dr. Lim found that plaintiff was well-groomed, had good eye contact, displayed average mood and appropriate affect, was cognitively intact, and her insight and judgment were good. *Id*. Plaintiff denied suicidal ideation, homicidal ideation, and auditory and visual hallucinations. *Id*. Dr. Lee opined that plaintiff had a poor ability to understand and remember both simple and detailed and complex instructions. *Id*. at 247. He further opined that plaintiff had a poor ability to carry out instructions; to attend and concentrate; work without supervision; interact with the public, coworkers and supervisors; and to adapt to changes in the work place. *Id*. at 247-48. He also stated that plaintiff's prognosis was "fair to good on regular use of medications." *Id*.

On November 10, 2007, plaintiff was seen by Dr. Bradley Daigle, a state-agency examining physician. *Id*. at 200-205. Dr. Daigle found that plaintiff's thought process was coherent and organized; there were no suicidal, homicidal, or paranoid ideations; mood was euthymic; affect was slightly labile; plaintiff seemed restless and outspoken; and her insight and judgment appeared to be fair regarding current problems. *Id*. at 202-204. Dr. Daigle diagnosed plaintiff with possible bipolar disorder, currently untreated, and probable borderline personality disorder, currently untreated. *Id*. at 204. He opined that plaintiff was not significantly limited in her ability to understand, remember, and carry out simple job instructions, and in her ability to follow detailed and complex instructions. *Id*. at 205. It was also his opinion that plaintiff had slight impairments in her ability to relate and interact with supervisors, coworkers, and the public; maintaining concentration, persistence and pace; in her ability to associate with day-to-day work activity, including attendance and safety; and moderately limited in ability to adapt to the stresses common to a normal work environment. *Id*. at 205. He further opined that her

6

1 psychiatric condition was treatable and that plaintiff needed to get back on her medication as
2 soon as possible. *Id*. at 204.

3       Plaintiff was also evaluated by Dr. David C. Richwerger, Ed.D., an examining licensed
4 psychologist, on October 3, 3008. *Id*. at 228-325. He found that plaintiff was fully oriented to
5 time, place, person and purpose for the evaluation; thought process was clear and rational, but
6 occasionally tangential and detailed; understanding of instructions was within normal limits for
7 simple tasks, with occasional difficulty in complex tasks; concentration and memory were within
8 normal limits; and judgment was in the low average range. *Id*. at 231-32. He diagnosed plaintiff
9 with bipolar 2, mixed; alcohol abuse, rule out dependence, in remission; learning disorder, not
10 otherwise specified; borderline personality disorder; and borderline intellectual functioning. *Id*.
11 at 233-34. He opined that plaintiff is slightly impaired in her ability to perform detailed and
12 complex tasks, performing activities on a consistent basis, understanding and accepting
13 instructions from supervisors, and slightly to moderately impaired in her ability to deal with the
14 usual stresses encountered in competitive work. *Id*. at 234-35. He further opined that plaintiff
15 was moderately impaired in her ability to complete a normal workday or workweek without
16 interruption from a psychiatric condition and in ability to interact with coworkers and the public,
17 but that she had no impairments in performing simple and repetitive tasks, performing work
18 activities without supervision, and maintaining regular attendance in the workplace. *Id*. at 234.
19 He also found that plaintiff's prognosis was likely long term, and that she would likely do better
20 on medication. *Id*. at 234.

21       The record also contains the May 5, 2011 opinion from Dr. Andrews. *Id*. at 421-422.
22 Dr. Andrews opined that plaintiff has poor ability to understand and remember instructions, poor
23 ability to sustain concentration and task persistence, poor social interactions, and poor
24 adaptation. *Id*. His opinion was based on "poor memory; poor focus; poor concentration; short
25 attention span; easily irritated and agitated; racing thoughts." *Id*. at 421.
26 /////

7

The ALJ considered the Dr. Lim's opinion, but declined to give it significant weight. In discrediting Dr. Lim's opinion, the ALJ specifically stated:

> Dr. Lim's opinion that the claimant has numerous "poor" abilities in the broad area of mental functioning is not supported by the treatment record as a whole. Dr. Lim provided no objective findings in support of his extreme opinion, and appears, rather to have taken the claimant's subjective allegations at face value. As noted above, with appropriate medication treatment, the claimant's symptoms are stable and controlled. The claimant's activities of daily living further demonstrate a much broader functional capacity than that opined by Dr. Lim. For instance, the claimant has reported taking care of her younger daughter (Exhibit 8E), performing household chores such as cleaning, laundry, and cooking, taking the bus, and going out alone without any reported difficulty (Exhibit 2F/3). Contrary to Dr. Lim's statement that the claimant has poor concentration and memory, the claimant's husband has stated that his wife is able to pay bills, court change, handle a savings account, and use a checkbook or money order. (Exhibit 7E/4).

*Id*. at 15.

Thus, the ALJ rejected Dr. Lim's opinion because (1) it was not supported by the treatment record as a whole, (2) he relied heavily on plaintiff's subjective allegations, and (3) the opinion was inconsistent with plaintiff's activities of daily living.

The record supports the ALJ's finding that Dr. Lim's opinion was not supported by his own treatment notes. With the exception of notes from October 14, 2008, which indicate that plaintiff was experiencing racing thoughts, anger, irritability, poor concentration and memory, nightmares, and poor sleep, *id.* at 415, Dr. Lim's notes reflect normal mental functioning. Dr. Lim consistently found that plaintiff "is well groomed, has good eye contact. Her mood is average, and her affect appropriate. She denies suicidal ideation, homicidal ideation, auditory or visual hallucination. Her insight and judgment are good, cognitively intact." AR 395, 396, 398, 400, 402, 406, 409, 410 (treatment notes from November 13, 2008 through December 7, 2009). As Dr. Lim's opinion was not supported by objective findings, the ALJ properly rejected it on this basis. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (finding that the ALJ properly rejected a physician's opinion where it was not supported by objective evidence, "not even a clinical observation.").

1  Relying on the *Averback v. Astrue*, 731 F. Supp. 2d 977 (C.D. Cal. 2010), plaintiff argues

2 that the lack of objective findings was not a legitimate basis for rejecting Dr. Lim's opinion. In

3 that case, the district court stated:

> Courts have recognized that a psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as is a medical impairment and that consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine. In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices in order to obtain objective clinical manifestations of mental illness . . . . [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnoses and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic technique.

*Id*. at 986 (quoting *Sanchez v. Apfel*, 85 F. Supp. 2d 986, 992 (C.D. Cal. 2000)).

This court does not disagree with the district court's discussion in *Averbach*. The instant case, however, does not simply involve a lack of laboratory testing. Rather, Dr. Lim's own clinical observations do not remotely support his extreme opinion. As discussed above, Dr. Lim opined that plaintiff's mental functioning was poor in every category except for one. However, he consistently observed that plaintiff "is well groomed, has good eye contact. Her mood is average, and her affect appropriate. She denies suicidal ideation, homicidal ideation, auditory or visual hallucination. Her insight and judgment are good, cognitively intact." AR 395, 396, 398, 400, 402, 406, 409, 410. Under these circumstances, it appears that Dr. Lim's opinion was rejected not because of an absence of objective findings but rather because the findings that are in the record simply do not support the opinion.

In the same vein, the ALJ properly discredited Dr. Lim's opinion because he took "the claimant's subjective allegations at face value." AR 15. The opinion of a treating physician may be rejected where it is premised primarily on plaintiff's subjective complaints and the ALJ properly discounted plaintiff's credibility. *Tonapetyan,* 242 F.3d at 1149. Plaintiff contends that the rejection of Dr. Lim's opinion on this basis was erroneous because Dr. Lim did not question

9

plaintiff's subjective complaints and supported his ultimate opinion with his own observations. ECF No. 15-1; *see Ryan v. Comm'r Soc. Sec.*, 528 F.3d 1194, 1199 (9th Cir. 2008) ("[A]n ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the [claimant's] complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations."). While there is no indication that Dr. Lim questioned plaintiff's subjective complaint, as set forth above, Dr. Lim's own observations failed to support his opinion. Plaintiff does not contend that the ALJ failed to properly discount his credibility. Thus, the ALJ was permitted to reject Dr. Lim's opinion based on his reliance on plaintiff's subjective complaints.

The last reason provided for rejecting Dr. Lim's opinion was its inconsistency with plaintiff's reported daily living activities. AR 15. Plaintiff reported to Dr. Daigle that "her activities of daily living consist of taking the bus, going out alone, performing her household chores, taking care of her child, and managing bills and money." AR 14; *see* AR 202. Plaintiff argues that the ALJ erred in relying on these reports because Dr. Daigle's "evaluation was for a period prior to the issue of disability in this case as Plaintiff is claiming disability from December 15, 2007." ECF No. 15-1 at 25. "Medical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1165. "This is especially true where disability is caused by a discrete event." *Id*.

Dr. Daigle's assessment was conducted on November 30, 2007. While this is technically before the alleged onset date, the record does not reveal a discrete event that could account for a decline in plaintiff's daily activities during the two week period between Dr. Daigle's assessment and plaintiff's alleged onset date. Given the proximity between the assessment date and plaintiff's alleged onset date, the court cannot agree with plaintiff that this evidence is not relevant to plaintiff's disability claim. Accordingly, the ALJ properly rejected Dr. Lee's opinion.

/////

10

1    Plaintiff further contends that the ALJ erred in giving undue weight to opinions of
2 examining physicians Dr. Daigle and Dr. Richwerger.  ECF No. 15-1 at 37-39.  Plaintiff
3 contends that the ALJ should not have relied on these opinions in assessing her claims because
4 Dr. Daigle and Dr. Richwerger did not have an opportunity to review all of plaintiff's medical
5 records, including medical records that did not exist at the time of they examined plaintiff.  *Id.*
6 Indeed,  Dr. Daigle and Dr. Richwerger were provided with minimal records to review prior to
7 examining plaintiff.  AR  200, 228.  However, contrary to plaintiff's contention, their opinions
8 are still valid.  *See Walshe v. Barnhart*, 70 Fed. Appx. 929, 931 (9th Cir. 2003) (finding that a
9 consultative examination report was valid evidence notwithstanding the consulting physician's
10 lack of review of plaintiff's medical records "because Social Security regulations do not require
11 that a consulting physician review all of the claimant's background records.").

12    Plaintiff further contends that the ALJ should not have relied on these opinions because
13 Dr. Daigle and Dr. Richwerger never reviewed plaintiff's school records.  ECF No. 15-1 at 38.
14 Indeed, plaintiff's school records, which document her numerous disciplinary violations, were
15 not submitted to the Appeals Council until after the ALJ rendered his decision in plaintiff's case.
16 *See* AR 1-4, 91-98.  Although the ALJ was not presented with this evidence, it was considered
17 by the Appeals Council and therefore must also be considered by this court.  *See Brewes v.*
18 *Commissioner of Social Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012) ("when the Appeals
19 Council considers new evidence in deciding whether to review a decision of the ALJ, that
20 evidence becomes part of the administrative record, which the district court must consider when
21 reviewing the Commissioner's final decision for substantial evidence").  Here, the records are
22 from plaintiff's high school and reflect her behavioral problems between September 1997 and
23 June 2000.  *Id*.  Plaintiff claims that she became disabled on December 15, 2007, more than
24 seven years after the last disciplinary event.  Given that these records pertain to behavior well
25 before plaintiff's alleged onset date, they are not probative evidence of plaintiff's functional
26 impairments at the time she allegedly became disabled.  *See Burkhart v. Bowen*, 856 F.2d 1335,

1340 n.1 (9th Cir. 1988) (finding that an ALJ properly rejected evidence on the ground that it was not probative because it was prior to the relevant time period); *see also Carmickle*, 533 F.3d at 1164-65 (indicating that evidence from "well before" the alleged onset date is not probative).

Both Dr. Daigle and Dr. Richwerger examined plaintiff and rendered an opinion about her current functional limitations based on their findings. *See* AR 200-205, 228-325. Their opinions constitute substantial evidence, and the ALJ did not err in relying on their opinions in determining that plaintiff is not disabled. *See Tonapetyan*, 242 F.3d at 1149 (holding that an examining physician's opinion constitutes substantial evidence because it relies on independent examination of the claimant).

### B. Plaintiff Fails to Show That She Satisfies the Paragraph B Criteria for Listings 12.02, 12.04, and 12.08.

Plaintiff argues that the ALJ erred at the third-step of the sequential process by failing to properly consider whether plaintiff satisfied the "paragraph B" criteria under Listings 12.02, 12.04, and 12.08. ECF No. 15-1. Plaintiff bears the burden of establishing that her impairments meet or equal one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Yuckert,* 482 U.S. at 146 n.5. The "paragraph B" criteria is the same for Listings 12.02, 12.04, and 12.08. To satisfy the criteria, a claimant must show at least two of the following: (1) marked restriction in activities of daily living; (2) marked restrictions maintaining social functioning; (3) marked restrictions in maintaining concentration, persistence or pace; and (4) repeated episodes of decompensation, each of an extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listings 12.02B, 12.04B, 12.08B. Marked restrictions are more than moderate, but less than extreme. *See* Listing 12.00(C). The regulations define "repeated episodes of decompensation, each of an extended duration" as "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listings 12.C(4).

The ALJ was not required to address the particular listings identified by plaintiff. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990). Rather, it was sufficient for the ALJ

to provide "an adequate statement of the foundations on which the ultimate factual conclusions are based." *Id.* Here, the ALJ provided a summary of the record and identified which pieces of evidence supported his ultimate finding. AR 12-15. The evidence relied upon by the ALJ in reaching his conclusion supports a finding that plaintiff does not satisfy the paragraph B criteria.

In addressing plaintiff's daily activities the ALJ stated, "[Plaintiff] reported to Dr. Daigle that her activities of daily living consist of taking the bus, going out alone, performing her household chores, taking care of her children, and managing bills and money . . . . [T]he ability to engage in such activities of daily living suggests that the claimant is capable of sustaining at least some level of regular work activity."[3] AR 14. These findings are supported by Dr. Daigle's report, which, as set forth above, is relevant evidence in light of its proximity to plaintiff's alleged onset date. *See id*. at 202.

Plaintiff contends that there is other evidence in the record that shows she is more limited in her daily activities. ECF No. 15-1 at 25. For instance, testimony from her husband indicates that she he performs the majority of household chores. AR 159-160. While this evidence supports plaintiff's position, the ALJ's finding is also supported by evidence in the record. Under these circumstances, the court is not permitted to disrupt the ALJ's finding. *See Thomas*, 278 F.3d at 954 ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."). Here, substantial evidence supports the ALJ's decision that plaintiff has not demonstrated marked restrictions in daily activities sufficient to meet the criteria under Listings 12.02, 12.04, and 12.08.[4]

---

[3] The regulations provide that activities of daily living "include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listings 12.00C(1)

[4] Plaintiff also argues that multiple low GAF scores show she has marked restrictions in her daily activities. "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas. v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). "The scale does not evaluate impairments

13

The next category under the paragraph B criteria is restrictions in social functioning. This section refers to "the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listings 12.00C(2). Plaintiff first argues that Dr. Lim and Dr. Andrew's opinion that plaintiff has poor ability to interact with the public, coworkers, and supervisors demonstrates marked restrictions in social functioning. ECF No. 15-1 at 27-30.

As discussed above, the ALJ properly rejected Dr. Lim's opinion. As for Dr. Andrew, his opinion was not included in the record until after the ALJ rendered a decision. The Appeals Council, however, considered this evidence and determined that it did not warrant granting review of the ALJ's decision. Indeed, Dr. Andrew's opinion essentially parrots Dr. Lim's opinion. Dr. Andrew opined that plaintiff has severe impairments in every mental category. His explanation for this opinion is "poor memory; poor focus; poor concentration; short attention span; easily irritated and agitated; racing thoughts." *Id*. There is no indication that he performed any objective tests, and the origin of his findings is not clear. His opinion is brief, conclusory, and essentially identical to Dr. Lim's opinion, which the ALJ found to be unsupported by the record. Dr. Andrew's opinion does not invalidate the ALJ's determination and otherwise fails to establish marked restriction in social functioning. *See Batson v. Comm'r of the SSA*, 359 F.3d 1190, 1195 (9th Cir. 2004) (holding that an ALJ is not required to accept a treating physician's opinion that is conclusory, brief, and unsupported by the record as a whole or objective medical findings).

/////

---

caused by psychological or environmental factors." *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 598 n.1 (9th Cir. 1999). Since the scores are intended for use in planning treatment, they are not dispositive in social security cases, *Vance v. Astrue*, No. CV 07-4418-SS, 2008 WL 2955140  *5 (C.D. Cal. July 30, 2008), and "an ALJ is not required to give controlling weight to a treating physician's GAF score," *Chavez v. Astrue*, 699 F. Supp. 2d 1125, 1135 (C.D. Cal. 2009). Accordingly, the presence of low GAF scores is insufficient to disrupt the ALJ's finding, which is supported by other evidence in the record. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir.2005) (low GAF does not require ALJ to find disability).

1   Plaintiff next argues that her school disciplinary records indicate that she has marked
2   restrictions in social functioning.  As already observed, these records predate the alleged onset
3   date by more than seven years and therefore are not probative to plaintiff's disability claim.
4   *Burkhart*, 856 F.2d at 1340 n.1 (finding that an ALJ properly rejected evidence on the ground
5   that it was not probative because it was prior to the relevant time period); *see also Carmickle*,
6   533 F.3d at 1164-65 (indicating that evidence from "well before" the alleged onset date is not
7   probative).  Plaintiff has therefore failed to show that she has marked restrictions in social
8   functioning.

9   Plaintiff further contends that the evidence establishes marked restrictions in
10  concentration, persistence, or pace.[5]  "Concentration, persistence, or pace refers to the ability to
11  sustain focused attention and concentration sufficiently long to permit the timely and appropriate
12  completion of tasks commonly found in work settings."  20 C.F.R. Pt. 404, Subpt. P, App. 1,
13  Listings 12.00C(3).  The ALJ relied on the opinions from examining physicians Drs. Daigle and
14  Richwerger.  Dr. Daigle found that plaintiff was slightly limited in her ability to maintain
15  concentration, persistence, and pace.  AR 205.  Dr. Richwerger opined that plaintiff's mental
16  impairments caused no more than moderate impairments.  *Id*. at 234.  He specifically opined that
17  plaintiff had "slight impairment in her ability to perform work activities on a consistent basis."
18  *Id*.  The opinions from these examining sources constitute substantial evidence supporting the
19  ALJ's step three finding.  *Tonapetyan*, 242 F.3d at 1149 (holding that an examining physician's
20  opinion constitutes substantial evidence because it relies on independent examination of the
21  claimant).

22  The last category that must be considered under paragraph B is episodes of
23  decompensation, each of extended duration.  "The term repeated episodes of decompensation,

---

[5] In arguing that she has marked restrictions in concentration, persistence, and pace, plaintiff again points to her school records and the opinions of Drs. Lim and Andrew.  As set forth above, this evidence was either properly rejected or is not probative to the time period at issue.

15

each of extended duration . . . means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listings 12.00C(4). The record arguably contains one episode of decomposition.

The record shows that on August 17, 2009, plaintiff was put on a "5150 hold"[6] due to suicidal ideations. AR 360. The record shows that plaintiff stopped taking her psychotropic medications because she was breastfeeding. *Id*. at 387. After she ceased taking her medications, she started to have psychiatric complications, including more depression. *Id*. On August 18, 2009, plaintiff was held overnight at Sierra Vista Hospital. *Id*. at 252. Plaintiff was discharged on August 19, 2009, against medical advice and without any medications. *Id*.

Plaintiff argues that this episode of decompensation continued after she was discharged from the hospital because her mother took leave from work to help her take care of her kids. ECF No. 15-1 at 33. According to plaintiff, the fact that plaintiff's mother helped care for her children shows that "this continuous episode would be equivalent of more that [sic] three episodes of extended duration within one year." *Id*. This contention is belied by the record. Plaintiff was seen by Dr. Lim, within two weeks after her discharge. His treatment notes from August 28, 2009 reflect that plaintiff was "well groomed, has good eye contact. Her mood is average, and her affect appropriate. She denies suicidal ideation, homicidal ideation, auditory or visual hallucination. Her insight and judgment are good, cognitively intact." *Id*. at 398. This evidence demonstrates that plaintiff's episode of decompensation did not persist past August 28, 2009. Accordingly, plaintiff's contention that she had one continuous episode of decompensation is not supported by the record.

Plaintiff also argues that medical records show that she had prior episodes of decompensation. ECF No. 15-1 at 34. Plaintiff contends that there was an episode in November 2007, and another when she 15 years old. *Id*. Even if plaintiff's contentions are true, these prior

---

[6] *See* Section 5150 of the California Welfare and Institutions Code.

16

episodes were not within a year of plaintiff's August 2009 hospitalization and are therefore insufficient to satisfy the decompensation requirement. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listings 12.00C(4) ( "The term repeated episodes of decompensation, each of extended duration . . . means three episodes within 1 year . . . .".). Plaintiff has failed to sustain her burden of demonstrating that she meets the paragraph B criteria.

### C. Plaintiff Has Failed to Show That Her Mental Impairments Satisfy the Paragraph C Criteria of Listings 12.02 and 12.04.

Plaintiff also argues that the ALJ erred by failing to consider whether her mental impairments satisfied the paragraph C criteria of listings 12.02 and 12.04. Paragraph C of listing 12.02 provides:

> C. Medically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or
>
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listings 12.02C and 12.04C.

Paragraph C of listing 12.04 differs only in its introductory paragraph, which provides:

> C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listings 12.02C and 12.04C.

The parties do not dispute that the record contains sufficient evidence showing a two year history of either a chronic organic mental disorder or a chronic affective disorder causing more

17

than minimal limitations. Nevertheless, plaintiff's argument fails. She does not point to competent evidence satisfying one of the three remaining criteria. As set forth above, plaintiff has not shown repeated episodes of decompensation, each of extended duration. She does not claim that there is any evidence that she is likely to decompensate if there was a minimal increase in mental demands or change in her environment. Lastly, contrary to plaintiff's contention, the evidence does not establish an inability to function outside of a highly supportive living arrangement. In finding that plaintiff was not disabled, the ALJ specifically relied on her activities of daily living as reported to Dr. Daigle. Plaintiff "reported to Dr. Daigle that her activities of daily living consist of taking the bus, going out alone, performing her household chores, taking care of her child, and managing bills and money." AR 14; *see id.* at 202. The ALJ also observed that plaintiff's "husband has stated that his wife is able to pay bills, count change, handle a savings account, and use a checkbook or money order." This evidence adequately demonstrates that plaintiff does not have an inability to function outside highly supportive living arrangement. *See Escobar v. Astrue*, 2013 WL 78474, *5 (E.D. Cal. January 4, 2013) (finding that plaintiff's ability to maintain fair hygiene and clear and concise thought process even while homeless was adequate evidence that plaintiff did not need a highly supportive living situation to function). Accordingly, plaintiff has failed to satisfy her burden of showing that she meets the paragraph C criteria for listings 12.02 and 12.04.

IV. CONCLUSION

The ALJ applied the proper legal standard and supported his decision with substantial evidence. Therefore, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. The Commissioner's cross-motion for summary judgment is granted; and

/////

/////

/////

3. The Clerk is directed to enter judgment in the Commissioner's favor.

DATED: September 30, 2013.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE